FILED
2010 Jul-21 PM 03:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| SHARON ANN IRVIN, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 6:09-CV-1414-RDP |
| } | |
| MICHAEL J. ASTRUE, } | |
| COMMISSIONER OF } | |
| SOCIAL SECURITY, } | |
| } | |
| Defendant. | |

**MEMORANDUM OF DECISION**

Plaintiff Sharon Ann Irvin brings this action pursuant to 42 U.S.C. § 205(g) and § 1631(c)(3), seeking judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB"). *See* 42 U.S.C. §§ 405(g), 1383(c). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and the proper legal standards were applied.

**I.  Procedural History**

Plaintiff filed her application for DIB on May 17, 2006 (Tr. 51), alleging a disability onset date of May 1, 1999. (Tr. 64-69). Plaintiff's claim was denied initially, and she then requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 51-58). Plaintiff's case was heard by ALJ Earl C. Cates on December 20, 2007. (Tr. 25-50, 59-63). In his January 23, 2008 decision, ALJ Cates determined that Plaintiff was not eligible for DIB because she failed to meet the disability requirements of the Act. (Tr. 14-19). Plaintiff filed a request for review of the ALJ's decision on March 12, 2008. (Tr. 10). The Appeals Council denied Plaintiff's request

for review of the hearing decision on May 29, 2009 (Tr. 1-3), making the Commissioner's final decision subject to judicial review by this court. *See* 42 U.S.C. § 405(g).

At the time of the hearing in question, Plaintiff was a 54 year old woman with a twelfth grade education. (Tr. 31, 287). Plaintiff had previously worked as a grocery store cashier from May 1981 to April 1995. (Tr. 33, 91-99). Plaintiff testified that she quit work in 1995 to care for her mother, who came to live with her for nine months before getting better. (Tr. 32-33). In May 2000, her mother's condition worsened and she moved back in with Plaintiff, who cared for her until she died in September 2002. (Tr. 33). The last date Plaintiff was eligible for DIB was December 31, 2000. (Tr. 73).

Plaintiff alleges that she suffers from back problems and migraine headaches. (Tr. 77). Plaintiff complains that she can no longer function due to her health problems and has been unable to engage in substantial gainful activity since May 1, 1999. (*Id.*).

Plaintiff's relevant medical history begins in March 1997, when she suffered a sprain in her lumbar back while sweeping off her carport. (Tr. 236). Plaintiff began seeing Dr. Pyle, her family doctor at the time, but was referred to Dr. Allen Ray who she first visited on April 16, 1997. (Tr. 236, 157). An initial MR scan ordered by Dr. Ray showed that Plaintiff suffered from a herniated disc. (Tr. 155). Dr. Ray considered Plaintiff a surgical candidate; however, Plaintiff initially decided not to go through with the procedure. (Tr. 154-55). Two years later at a follow up appointment, Plaintiff explained that she deferred surgery because of a death in the family, as well as embarrassment. (Tr. 154). On December 15, 1999, Dr. Ray again recommended surgery to Plaintiff after reviewing a recent MRI. (Tr. 153). Dr. Ray performed a lumbar microdisekectomy operation on Plaintiff on December 28, 1999, at Shoals Hospital. (Tr. 122-29). After her surgery, Plaintiff visited Dr. Ray five times from January to July 2000. (Tr. 148-

52).  During her post-surgery visits to Dr. Ray in 2000, Plaintiff reported back pain and was treated with medications. (Tr. 148-52).  Plaintiff visited Dr. Ray on July 5, 2000 and reported she was "doing better." (Tr. 148).  The next time Plaintiff visited Dr. Ray was May 21, 2004, when she again complained of back pain. (Tr. 147).

During a June 17, 2004 visit to Dr. Ray, it was recommended to Plaintiff that she have another surgery for back pain. (Tr. 145).  On June 22, 2004, Dr. Ray performed a decompressive lumbar laminectomy and a re-do lumbar microdiskectomy. (Tr. 130-39).  Plaintiff testified that since her 2004 surgery, she has not been doing very well, and her pain is much worse than how she felt after her first surgery. (Tr. 37).  Medical records indicate that Plaintiff has continually seen doctors regarding side effects from her second operation. (Tr. 141-44, 193-94, 196-207, 212-31).

In addition to back pain, medical records also indicate that Plaintiff suffers from migraine headaches.  Plaintiff testified that she has been "suffering with migraine headaches [for] a total of 30 years." (Tr. 40).  Doctors' reports in the record show Plaintiff's earliest complaint about migraine headaches was to Dr. Pyle on February 14, 1995. (Tr. 242).  The reports also show that Plaintiff complained of migraine headaches at three separate visits with Dr. Pyle in 1995. (Tr. 239-42).  As her family doctor, Dr. Pyle saw Plaintiff over twenty times for different reasons from 1994-1999. (Tr. 234-48).  After her initial complaints in 1995, Plaintiff visited Dr. Pyle complaining of headaches once in 1996, 1997, and 1999. (Tr. 235, 237-38).  There are no medical records showing Plaintiff complaining of migraine headaches to a doctor after 1999 until she visited Dr. Daniel C. Potts on December 21, 2004. (Tr. 168-70).  Plaintiff visited Dr. Potts, as well as Dr. Cesar Romero, on multiple occasions in 2005 with complaints of headaches.

(Tr. 162-91). On October 31, 2008, Dr. Romero concluded that after medicated treatment, Plaintiff's "migraine headache is resolved." (Tr. 181).

Plaintiff also testified that she is suffering from depression and insomnia. (Tr. 43). Medical records do not clearly indicate treatment for such impairments, especially for any time between Plaintiff's onset date of disability and her date last insured. Though Plaintiff testified that she took medication for both depression and insomnia, she only lists medication for migraine headaches, muscle spasms, and pain in the list of medications on her disability report form. (Tr. 43, 82).

## II. ALJ Decision

Determination of disability under the Act requires a five step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity ("RFC") can meet the physical and mental demands of past work. The claimant's RFC consists of what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

A claimant bears the burden of proving she is "disabled," or unable to "engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  Moreover, to be eligible for DIB, a claimant must show she became disabled prior to the expiration of her disability insured status. 42 U.S.C. §§ 416(i)(3), 423(a) and (c); 20 C.F.R. §§ 404.101, 404.130, 404.1311.  A claimant must therefore produce evidence to demonstrate her claim. 20 C.F.R. § 416.912(a)-(b).  Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982); *see also* 20 C.F.R. § 416.920.

The ALJ found that Plaintiff has not engaged in substantial gainful activity since May 1, 1999, her alleged onset date of disability. (Tr. 16).  Plaintiff last met the insured status requirements for DIB on December 31, 2000. (Tr. 16).  Based on the medical evidence, the ALJ concluded that Plaintiff suffers from migraine headaches and degenerative disc disease of her lumbar spine with a microdiscectomy in December 1999. (Tr. 16).  However, the ALJ determined that through the last date she was insured, Plaintiff did not have an impairment or combination of impairments that significantly limited her ability to perform basic work related activities for twelve consecutive months. 20 C.F.R. § 404.1521. (Tr. 16).

According to the ALJ, Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms, prior to her date last insured, are not entirely credible. (Tr. 18). Additionally, although Plaintiff alleged additional impairments including depression and

insomnia, the ALJ determined there is little or no evidence to support those impairments prior to her date last insured. (Tr. 18).  The ALJ concluded that, based on the medical evidence of record, Plaintiff did not have any impairment that would result in sustained limitations in her functioning prior to her date last insured. (Tr. 19).

### III.  Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (*See* Pl.'s Br. 17-18).  Plaintiff argues that, for the following reasons, the ALJ's decision is not supported by substantial evidence and improper legal standards were applied: (1) the ALJ failed to logically articulate reasons for refusing to credit her subjective testimony and substituted his opinion for that of a treating physician; and (2) the ALJ's decision is factually irrational and ignores a treating physician's opinions. (*Id.*).

### IV.  Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701. For the reasons set forth below, the ALJ's decision denying Plaintiff benefits is due to be affirmed.

## V. Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand and/or reversal. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and applied the proper legal standards.

**A.  The ALJ Logically Articulated Reasons Why Claimant's Statements Are Not Entirely Credible**

Plaintiff argues that the ALJ erred in his finding that her testimony about her pain and fatigue was not fully credible. (Pl.'s Br. at 16). If objective medical evidence does not confirm the severity of the alleged symptoms but indicates a claimant's impairment could reasonably be expected to produce the alleged symptoms, an ALJ must evaluate the intensity and persistence of the alleged symptoms and their effect on the claimant's ability to work. 20 C.F.R. § 404.1529. In evaluating the credibility of a claimant's testimony regarding their symptoms, the ALJ may consider, *inter alia*; the claimant's daily activities; the location, duration, frequency, and intensity of the pain and other symptoms; factors that precipitate and aggravate the symptoms; the type,

dosage, effectiveness, and side effects of any medication; and other treatments the claimant uses to relieve pain. 20 C.F.R. § 404.1529(c)(3). If the ALJ decides not to credit a claimant's subjective testimony, "he must articulate explicit and adequate reasons for doing so." *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir. 1991). There is no strict requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as his decision is not a "broad rejection which is not enough to enable the [district court] to conclude that the ALJ considered her medical condition as a whole." *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005).

In this case, the ALJ found that, "[a]fter considering the evidence of record…[Plaintiff's] statements concerning the intensity, persistence and limiting effects of her symptoms, prior to her date last insured, are not entirely credible." (Tr. 18). Other than her conclusory assertion that she became disabled on May 1, 1999, Plaintiff's testimony provided little insight regarding her symptoms during the relevant time period. When examining the factors to consider while evaluating the credibility of Plaintiff's testimony regarding her pain, the ALJ was given very little evidence to find her alleged onset date credible.

After her visit to Dr. Ray on July 5, 2000, Plaintiff did not seek any medical attention or receive any prescription pain medication until 2004. (Tr. 36, 147-48). Plaintiff testified that after her first surgery she was "doing fine" and "could get by" until her visit with Dr. Ray on May 21, 2004. (Tr. 36, 147). Plaintiff's argument that "records from the time of surgery forward clearly show that [she] is in excruciating pain" (Pl. Br. 16)[1] fails to provide any basis for an ALJ finding (which she contends for) that she was disabled from July 5, 2000 to May 21, 2004. Plaintiff has

---

[1] Plaintiff cites to three medical reports from doctor visits recognizing her back pain prior to her first surgery.

not provided any evidence or credible testimony to help determine a disabling impairment during the time period in question. The ALJ acknowledged that there was medical evidence which showed a second back surgery and subsequent conservative treatment, as well as treating source medical opinions from 2007; he noted these records all pertained to a period long after Plaintiff's insured status expired and were, thus, not relevant to the time period at issue. (Tr. 18-19).

Plaintiff also alleges that she suffers from migraine headaches. (Tr. 40). While medical evidence exists to support such a claim, the ALJ properly found that no medical reports support Plaintiff's allegation that she suffers from severe headaches which significantly limit her activities. (Tr. 18). At her hearing, Plaintiff also stated that she suffers from depression and insomnia. (Tr. 43). The ALJ was also correct in finding that little or no evidence exists to show that Plaintiff suffered from such other alleged impairments prior to her date last insured. (Tr. 18).

In addition to the medical evidence, the ALJ also examined Plaintiff's behavior. As the ALJ stated, one who is disabled over an almost four year period could be reasonably expected to visit a doctor, take medication, or apply for disability. (Tr. 18-19). Nothing in the record indicates that Plaintiff took any measures to accommodate her alleged disability from her last visit with Dr. Ray in 2000 until her next visit in 2004. The ALJ also considered that Plaintiff cared for her mother from May 2000 until her death in September 2002. (Tr. 19, 32-33). Such behavior is indicative of a higher functional capacity than Plaintiff alleges. The medical evidence that relates to the relevant time period simply does not suggest a level of pain or fatigue that would cause disability.

The court finds that the ALJ made an appropriate determination in his evaluation of the credibility of Plaintiff's pain testimony. Plaintiff's testimony, medical records, and behaviors do not indicate disabling symptoms from her medically determinable impairments before her

9

insured status expired. Plaintiff argues that the ALJ "substituted his opinion for that of a treating physician" in making a finding as to the credibility of her subjective complaints. (Pl.'s Br. 16) (citing *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir. 1992)). However, the ALJ did not diagnose any condition, provide treatment, or do anything ordinarily done by a doctor. He simply made factual findings. The ALJ is not required to accept Plaintiff's statements regarding her condition before her insured status expired and properly discredited her testimony in his decision. *See* SSR 96-7p. His findings are supported by substantial evidence on the record as a whole.

**B.     The ALJ Correctly Interpreted and Relied on the Treating Physician's Opinion**

Plaintiff argues that the ALJ's decision "ignores a treating physician's opinions in violation of *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988), stating that the opinions of the treating physician must be accorded substantial weight." (Pl.'s Br. at 16). An ALJ must "clearly articulate the reasons for giving less weight to the testimony of a treating physician." *Moore v. Barnhart*, 405 F.3d 1208, 1212. The Eleventh Circuit has adopted "the position of the Second and Seventh Circuits that a treating physician's opinion is still entitled to significant weight notwithstanding that he did not treat the claimant until after the relevant determination date." *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983) (citing *Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir. 1981)); *Stark v. Weinberger*, 497 F.2d 1092, 1097 (7th Cir. 1974).

In this case, the ALJ acknowledged the reports of Dr. Pyle, Plaintiff's family doctor while she had insured status, and Dr. Ray, the surgeon and treating doctor for her back pain. (Tr. 18.) The ALJ also recognized more recent medical records from 2004 including those from Dr. Cook and Dr. Potts. However, because the ALJ concluded that Plaintiff did not have a disabling condition between her onset date and her date last insured, those reports are not relevant. The ALJ clearly explained his decision to discredit the reports, stating they "are not relevant in the

determination of disability before her date last insured and little weight is given to them." (Tr. 19).

Plaintiff's argument fails to explain how the ALJ improperly discredited a treating physician's opinion. Indeed, Plaintiff fails to name which treating physician was believed to be improperly ignored. The ALJ gave substantial weight to the reports of the relevant treating physicians and explained his reasoning for discrediting other doctors' reports. Plaintiff's argument that the ALJ erred by ignoring the opinion of a treating physician is without merit.

## VI.  Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this      21st      day of July, 2010.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE